## McDANIEL ET AL. v. McDANIEL.

[—South—. In Banc.   No. 21108.]

1. BASTARDS.   *Illegitimate children inherit from mother's deceased
   brother.*

   Illegitimate children inherit their deceased mother's share in the
   estate of her deceased intestate brother, who left no wife or
   children surviving him.  Section 1655, Code 1906; Hemingway's
   Code, section 1387.

2. BASTARDS.   *Offspring of illegitimate inherit, if no surviving
   legitimate heirs in same degree.*

   Children of an illegitimate inherit an interest in the estate of a
   deceased ancestor or collateral kindred, if there be no legitimate
   heirs in the same degree who would otherwise take such interest,
   under statute, *supra.*

3. BASTARDS.   *Supreme Court will apply law, where facts appear on
   face of record.*

   Where the pleadings and decree are sufficient to establish the facts
   of a case, this court will decide and apply the law upon the face
   of the record, even though the testimony taken below does not
   appear here.

APPEAL from chancery court of Leake county.

HON. Z. A. BRANTLEY, Special Chancellor.

Proceeding between William McDaniel and others and
J. R. McDaniel to determine heirship.  From the decree,
both parties appeal.  Reversed on direct appeal, and judg-
ment rendered, and affirmed on cross-appeal.

123 Miss.—26.

*Robert B. Walker,* for appellant.

We contend that the fact that all the children of Betsy McDaniel may be illegitimate, and that the children of Hagar McDaniel are legitimate and of equal degree of kinship of the deceased, and that J. R. McDaniel is a full brother of deceased, does not prevent the children of Betsy McDaniel from sharing in the estate of their maternal uncle, Sam McDaniel, equally with J. R. McDaniel and the heirs of Hagar McDaniel, and that the court below erred grievously in holding otherwise.

Section 1387 of Hemingway's Code (sec. 1655 of Code of 1906), or that part thereof which applies to the case under consideration, reads: "All illegitimates shall inherit from their mother, and from her other children, and from her kindred, according to the statutes of descent and distribution; and the children of illegitimates and their descendants shall inherit from the brothers and sisters of their father or mother, whether legitimate or illegitimate, and from their grandparents, but the children of illegitimates shall not inherit from any ancestor or collateral kindred if there be legitimate heirs of such ancestor or collateral kindred if there be legitimate heirs of such ancestor or collateral kindred, in the same degree, to whom the estate would otherwise descend."

The decision of this case rests upon a correct interpretation of this section of the code. At common law, a bastard could neither inherit nor transmit by inheritance, except to his descendants. As was said in the case of *Alabama & Vicksburg Ry. Co.* v. *Williams,* 28 So. 853: "A bastard might become the *propositus* of a new line of descent from himself, but until a child was born to him in wedlock, he had no kindred, no father, no mother, no sister, no brother, and nothing which he did not acquire."

Judge Kent in his commentaries (Brown's Kent's Commentaries, page 268, 2 Kent, (9th Ed.), page 230 says: "A bastard being in the eyes of the law *nullius fidius,* the son of no one, has no inheritable blood and is incapable of inheriting as heir, either as to his putative father or

mother, or to any one else; nor can he have heirs, but of his own body. The laws of all civil states exclude bastards from inheritance, unless there was a subsequent legitimation."

In *Edwards* v. *Gaulding,* 38 Miss. 165, in discussing the act of February 23, 1846, which conferred upon illegitimates the right to inherit from their mother and from her other children, Judge HARRIS lays down the principle that innovations upon the common law are to be strictly construed, and says: "We are, therefore, to examine the act in question in reference to the principles of the common law; for it is not to be presumed, that the legislature intended to make any innovation upon the common law, further than the case absolutely required." So, then if illegitimates have any inheritable right under the laws of this state, they must look to the statutes for their rights. We must therefore, in the consideration of this case, confine our attention to an examination of the statute quoted above and to the decisions of the supreme court of this state based thereon.

The court below evidently rendered his decision against these appellants upon the theory that the last clause of section 1387, of the code quoted above, to-wit; but the children of illegitimates shall not inherit from any ancestor or collateral kindred if there be legitimate heirs of such ancestor or collateral kindred, in the same degree, to whom the estate would otherwise desend. It is a limitation upon the rights of "illegitimates" to inherit as well as upon the right of the "children of illegitimates" to inherit. That the court was entirely wrong in placing this construction upon this statute, we shall see as this discussion progresses.

As long ago as February 23, 1846, the legislature saw the injustice of making illegitimate children suffer for the sins of their parents as was true under the rigorous rules of the common law, and came to the relief of this unfortunate class by passing a law which is in these words, "Hereafter, all illegitimate children shall inherit the property of

their mother, and from each other as children of the half-blood, according to the statutes of descent and distribution now in force in this state. Hutchinson's Code, page 501, 84.

In the Code of 1857, article 115 on page 453, we find the harshness of the common law as to the inheritance by illegitimates still further molified by a clause permitting them to inherit from their mother and from her other children, and from her kindred, according to the statutes of descent and distribution; thus extending their right to inherit from the kindred of their mother. This is the wording of the statute as it stands to-day in so far as it applies to the right of illegitimates to inherit from their mother, and from her other children, and from her kindred.

In the Code of 1871, section 1955, extends the right of inheritance to the children of illegitimates, and as this section of the code is practically the same as section 1387 of Hemingway's Code, I quote it in full, to-wit: "If any man shall have a child or children, by a woman whom he shall afterwards marry, such child or children, if acknowledged by the man, shall, in virtue of such marriage and acknowledgment, be legitimate and capable in law to inherit and transmit inheritance as if born in wedlock. And illegitimates shall inherit from their mother, and from her other children, and from her kindred, according to the statutes of descent and distribution." This much of the present law was all that the Code of 1857 contained upon this subject, but section 1955 of the Code of 1871 goes a step further and continues in these words, "and the children of illegitimates and their descendants shall inherit from the brothers and sisters of their father or mother, whether legitimate or illegitimate and from their grandparents. But the children of illegitimates shall not inherit from any ancestor or collateral kindred, in the same degree, to whom the estate would otherwise descend." We see therefore that from 1857 until the adoption of the Code of 1871 there could not have been any limitation upon the right of illegitimates to inherit from their mother, or from her other children, or from her kindred." The only question

left then to be decided is whether the clause added by the Code of 1871, which is quoted above, placed any limitation whatever upon the right of illegitimates to inherit, from their mother, from her other children, or from her kindred, or does this final clause have reference only to children of illegitimates."

This final clause of limitation which is added by the Code of 1871 and which does not occur in the Code of 1857 is evidently what has confused the mind of our learned chancellor, and caused him to misconstrue the statute which applies to this case.  The clause added by the Code of 1871 was intended to place a limitation upon the rights of children of illegitimates to inherit and has no application to the right of illegitimates to inherit.  Innovations upon the common law must be strictly construed; and hence while the Code of 1857 conferred upon illegitimates the right to inherit from their mother, and her other children, and from her kindred it was silent as to the right of the children of illegitimates, to inherit and in the event that illegitimates should die prior to the death of their mother or her other children or her kindred that their children, that is the children of illegitimate and the decendants, would be cut off from inheriting the estate of the mother or her other children, or her kindred, to which the parents of such children would be entitled if they were living.  There was no provision for inheritance by representation though illegitimates, as was the case in regard to legitimates who died prior to the death of their ancestors or kindred, and in the event of the death of an illegitimate prior to the death of his mother, or her other children, or her kindred, the children or descendants of such illegitimate would be shut off from inheriting further back than the estate of their immediate illegitimate parent, hence it became necessary for the legislature to make an additional innovation upon the common law in order to remedy this injustice to the children of illegitimates, by adding a clause to the effect that children of legitimates should be allowed to inherit from their ancestors and col-

lateral kindred, even though their illegitimate parent should have died prior to the death of such ancestor or collateral kindred.

These added clauses under the Code of 1871 do not apply to the instant case, because the children of Betsy McDaniel et al. are the illegitimate children of their mother, Betsy McDaniel, and are not children of illegitimates as must be true for them to be disinherited under the law as applied to this case. I am free to admit that, if William McDaniel et al., being illegitimate children of Betsy McDaniel, deceased, were dead and had left children surviving them, these children would be disinherited under the law as it now stands. The supreme court of this state has uniformly and consistently placed this construction upon the statute under consideration. *Brown* v. *Alexander*, 79 So. 842; *Davidson* v. *Brownlee*, 75 So. 140. The court after discussing the *Scot Terry* case, 37 Miss. 65, and showing that the principles involved in that case are identical with the case under consideration, said: "Our statutes in conferring upon illegitimates the right and power of inheritance is an innovation upon, and more indulgent than, the rules of the common law; and by section 1655, section 1387 of Hemingway's Code of 1906, illegitimates inherit, not only from their mother, but from their mother's kindred. The liberality of our law towards illegitimates was the subject of comment by the court in *Shelton* v. *Minns*, 107 Miss. 133, 65 So. 115; *Hope* v. *Hoover*, 21 So. 134.

After careful consideration of the history of our statutes affecting the right of illegitimates to inherit, as briefly outlined above, and the decisions of the supreme court of this state in connection with the sections of the code above referred to, we are unable to see how any logical conclusion can be arrived at, other than that the children of Betsy McDaniel, the appellants, should inherit the estate of their maternal uncle, Sam McDaniel, deceased, on equal terms with the children of Hagar McDaniel, and with J. R. McDaniel, brother of the deceased.

As this is the only question remaining to be decided in this case, and as this cause has been in the court since November 29, 1916, at which time J. R. McDaniel was appointed administrator of this estate, we ask that the supreme court put an end to further litigation in this case, by rendering judgment to the effect that the children and heirs of Hagar McDaniel take one-third part thereof; and that J. R. McDaniel, brother of the deceased take one-third part thereof, and that said J. R. McDaniel be taxed with the cost of this appeal.

*J. L. McMillian* and *J. B. Harris,* for appellee.

The facts upon which the chancellor based this decree are not before this court and there is no agreement as to the facts or that the statement contained in the brief for the appellants is a correct statement. Under the state of case the rule seems to be settled that the decree of the court below must be affirmed unless it clearly and affirmatively appear otherwise on the record, that the decree is manifestly wrong. All presumptions will be indulged in favor of the correctness of the decree and that it is supported by the evidence before the court. *William* v. *Brown,* 90 Miss. 608; *Grego* v. *Grego,* 78 Miss. 443; *Pratt* v. *Hargraves,* 75 Miss. 897.

If the decree of the court below could be sustained upon any state of proof, it would not be reversed in the absence of the evidence before the court from the record. *Smith* v. *Hurd,* 8 S. & M. 682; *Lee* v. *Bennett,* 31 Miss. 119.

The action of the court below is presumed correct unless error is made manifest by the record. The rule is of universal application with reference to courts of general jurisdiction and recognized in every other court and there can be no reversal unless the record shows error affirmatively. *Byrd* v. *State,* 1 H. 163, 1 Mor. St. Cas. 45; *Grant* v. *Planters Bank,* 4 H. 326; *Harris* v. *Newman,* 5 H. 654; *Briggs* v. *Clarke,* 7 H. 457; *Abbott* v. *Hackman,* 2 S. & M. 510; *Ross* v. *Mims,* 7 S. & M. 197; *Long* v. *Schackleford,* 25

Miss. 559; *Steadman* v. *Holman,* 33 Miss. 243; *Pass* v. *McRea,* 36 Miss. 143; *Gale* v. *Lancaster,* 44 Miss. 413; *Doty* v. *Lucus,* 43 Miss. 337. The appellant must show clearly and affirmatively that there is error in the record or the judgment will be affirmed. *Fox* v. *Mathews,* 43 Miss. 433; *Gwinn* v. *Williams,* 27 Miss. 324. If the bill of exceptions does not purport to set out all evidence, every fact necessary to sustain the judgment will be presumed to have been proven unless the record shows the contrary. *Stevens* v. *Manyum,* 27 Miss. 481. This rule certainly would apply in a case like the one at bar when none of the evidence is in the record. This court has held in several of the cases that in the absence of a bill of exceptions setting out the evidence, instructions will not be held erroneous, if, in any conceivable state of facts that might have been in evidence under the issue, they would be correct. *Hartford Fire Ins. Co.* v. *Green,* 52 Miss. 332; *Bowers* v. *Ross,* 55 Miss. 213; *Strickland* v. *Judson,* 55 Miss. 234; *Kellum* v. *State,* 64 Miss. 226, 1 So. 174; *Covel* v. *Smith,* 68 Miss. 296, 8 So. 850; *Christman* v. *Russel,* 73 Miss. 452, 18 So. 656.

The court cannot say on the state of the record here that the decree of the chancellor is manifestly wrong and it must be manifestly wrong regardless of the state of the proof before it can be reversed. It cannot be reversed upon a mere doubt as was shown by the authorities above, it must clearly and affirmatively appear that the decree is wrong. The court will see that there was quite a number of parties claiming to be entitled to a share in the estate as the children of descendants of children of Hagar McDaniel and Betsy McDaniel. It is admitted on the pleadings by the appellant that Betsy McDaniel was lawfully married and left surviving her legitimate children, see page 26 of the transcript. It was denied that Betsy McDaniel was ever legally married, but what the state of the proof was on the controverted state of the facts, this court has no way of determining. In the first place it is not shown and not admitted that any of the claimants were the children of Betsy McDaniel and before they could inherit, even con-

ceding that they were entitled to inherit, proof of their right was necessary; whether this proof was made or not, the record does not show, certainly under the statute the children of the illegitimate children could inherit even if those claiming to be children of Betsy McDaniel had established their claim, but this does not appear, and this court is now asked to reverse the decree upon a mere statement of the appellants as to the facts not agreed to.   It is settled that in no case would the decree of the chancellor be reversed unless manifestly wrong and we refer the court to the following additional authorities.   *Leath* v. *Wright,* 2 H. 774; *Planters Bank* v. *Spencer; Valfour* v. *Mitchell,* 12 S. & M. 629; *Cason* v. *Cason,* 31 Miss. 578; *Partee* v. *Bedford,* 51 Miss. 84.

Where the final decree recites that the court has "maturely considered the allegations and proofs, and being satisfied to" this court in the absence of record testimony, will infer that there was sufficient evidence in the court below to uphold the decree.   *Wells* v. *Smith,* 44 Miss. 296.

The decree in the case at bar contains the recital as follows, see page 29 of the transcript:   This case coming on to be heard on bill of petitioner, amended bill or petition and an answer an amended answer of the defendant and oral proofs and the court hearing and fully understanding the same found, etc.

A finding on controverted facts, though it may be unsatisfactory, will not be disturbed, if it cannot be said that there is no evidence to support it.   *Kansas City & R. Co.* v. *Doggett,* 67 Miss. 250, 7 So. 278.

We concede that language in the decree is not altogether clear; it is manifest however, that the chancellor was applying the last clause of the statute which is as follows: "But the children of illegitimates shall not inherit from any ancestor or collateral kindred if there be legitimate heirs of such ancestors or collateral kindred in the same degree to whom the estate would otherwise descend."   Of course in order to apply this clause of the statute it was necessary to find that the children of Betsy McDaniel

were illegitimate, that being so their children could not inherit because there were legitimate heirs in the same degree and it must be presumed by this court that the evidence before the chancellor supported this decree.

So we see that conceding the law as stated, by the counsel for the appellant in their brief is correctly stated, the decree being based upon the state of the fact not before the court, the testimony being conflicting on all points, it must be presumed that the chancellor's decree is correct and supported by the evidence.

HOLDEN, J., delivered the opinion of the court.

This suit is a proceeding in chancery to determine the rightful heirs of one Sam McDaniel, who died intestate, leaving no wife or children, or descendants of children, surviving him. His sole surviving heirs at law were his brother, J. R. McDaniel, the appellee, and the children of two of his deceased sisters of the whole blood, viz., Betsy McDaniel and Hagar McDaniel. Betsy McDaniel left as her sole heirs her children, William McDaniel, Sarah Majure, Mary Thames, and Tamar Boyd, appellants here, and the children of a deceased illegitimate child. These children of Betsy McDaniel are all illegitimates. Hagar McDaniel left several legitimate children as her sole heirs. Upon final hearing of the cause the chancellor declared that the appellee, J. R. McDaniel, and the children of the deceased Hagar McDaniel, are the sole heirs of the deceased, Sam McDaniel, and that the estate of the deceased should be divided equally between them—that is, J. R. McDaniel to take one-half and the children of Hagar McDaniel to take the other half; thus excluding all of the heirs of Betsy McDaniel from sharing, because they are illegitimates and cannot inherit from their uncle, Sam McDaniel, since there were legitimate heirs of the same degree to whom the estate should descend. From this decree the children of Betsy McDaniel, deceased, prosecute this appeal, and appellee, J. R. McDaniel, cross-appeals.

The exact questions presented are whether or not the appellants, as illegitimate children of Betsy McDaniel, deceased, can inherit that part of the estate of their uncle,

Sam McDaniel, which their mother, Betsy the sister of Sam, would have inherited, if she had survived her brother, Sam McDaniel, and whether the children of the deceased child of Betsy take the share of their deceased parents. The question presented involves the construction of section 1655, Code of 1906 (Hemingway's Code, section 1387), the material part of which is as follows:

"All illegitimates shall inherit from their mother, and from her other children, and from her kindred, according to the statutes of descent and distribution; and the children of illegitimates and their descendants shall inherit from the brothers and sisters of their father or mother, whether legitimate or illegitimate, and from their grandparents. But the children of illegitimates shall not inherit from any ancestor or collateral kindred if there be legitimate heirs of such ancestor or collateral kindred, in the same degree, to whom the estate would otherwise descend."

There seems to be very little difficulty in reaching a correct interpretation and application of the statute. It plainly provides that illegitimates shall inherit from their mother, and also from her kindred. The deceased, Sam McDaniel, having left no surviving heirs, except his brother, J. R. McDaniel, the appellee, and the children of his two deceased sisters, Hagar and Betsy, certainly one-third of the estate descended to Betsy, or to her children after her death. The fact that the children of Betsy were illegitimates did not prevent them from taking their mother's share in the estate, regardless of the fact that there were legitimate heirs in the same degree.

It seems that the chancellor was led into error by a misconstruction of the language in the latter part of the statute, which provides that the children of illegitimates shall not inherit, if there be legitimate heirs in the same degree to whom the estate would otherwise descend. The appellants are the children and grandchildren of Betsy McDaniel, who was a legitimate; but her children the appellants, are illegitimates, and the statute plainly provides

that they shall inherit from their mother and from her kindred. The intestate, Sam McDaniel, was a brother of Betsy and an uncle of the illegitimate children, the appellants, and the estate here involved should be divided on the basis of one-third to the appellee, J. R. McDaniel, one-third to the children of Hagar McDaniel, and the other one-third to the children and grandchildren of Betsy McDaniel, the appellants.

The children of the illegitimate deceased child of Betsy take the share of their deceased parent, because there is no legitimate heir to whom the share would otherwise descend. It would not go to the legitimates J. R. McDaniel and the children of Hagar, but would descend to the illegitimates of Betsy, if taken from these children of the illegitimate child of Betsy; therefore there are no "legitimate heirs to whom the estate would otherwise descend," and it must go to the children of the deceased illegitimate.

The appellee makes the contention that since the testimony taken in the lower court was not transcribed and presented here, we should not disturb the finding of fact by the chancellor. It is true that the testimony taken in the lower court is not before us, but the pleadings in the case, as well as the decree of the chancellor, are sufficient to present the question of law involved, and to reveal the error of the lower court in the application of the law to the facts as shown upon the fact of the record.

The decree of the lower court is reversed on direct appeal, and judgment will be entered here for the appellants, and is affirmed on cross-appeal.

*Reversed.*